UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NHUC THENG TANG ,<br><br>Petitioner,<br><br>v.<br><br>TODD BLANCHE, ET AL,<br><br>Respondent. | Case No. 2:26-cv-03797-TLF<br><br>ORDER |

Petitioner Nhuc Theng Tang, through counsel, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging her immigration detention by the Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE), at the Northwest ICE Processing Center (NWIPC) in Tacoma, Washington. Dkt. Dkt. 18, Declaration of Deportation Officer Nhat Truong (Truong Decl.) at 5. Petitioner was taken into ICE custody on August 6, 2026, during an ICE check-in.[1] *Id*. at 3.

Petitioner contends that her redetention, after having been conditionally released into the United States more than twenty-five years earlier, violated her due process rights under the Fifth Amendment because ICE did not provide adequate pre-deprivation notice and an opportunity to challenge the basis for her redetention.[2] Dkt. 7

[1] The petition also cites October 6, 2026, but it appears that is a typographical error. Dkt. 7 at 4.

[2] Petitioner also argued that Vietnam was not reasonably foreseeable, and her continued detention was in violation of *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001), but that claim has become moot. Dkt. 7 at 4; Dkt. 20 at 2.

at 28-29. Petitioner further argues that due process requires ICE to comply with its own regulations governing the revocation of release in the post-final-order-of-removal context under 8 C.F.R. § 241.13. *Id.* at 29. Petitioner brings claims concerning the government's authority to remove her to a third country. Dkt. 7 at 30-33.

Petitioner seeks: (a) release under her prior conditions of release; (b) an order preventing re-detention unless respondents establish by clear and convincing evidence at a hearing before a neutral decisionmaker that petitioner is a flight risk or a danger to the community, based on changed circumstances after her most recent release by ICE, as well as providing various additional safeguards, such as a travel document, (c) an order preventing removal to a third country without notice and a meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings; and (d) an order barring removal to any third country where Petitioner is likely to face imprisonment or harm. Dkt. 7 at 4, 33-34.

The government filed a notice of imminent removal on October 20, 2026. Dkt.12; *see also* Dkt. 19-7. Petitioner moved for a temporary restraining order staying her removal, which the Court conditionally granted. Dkt. 14. Petitioner filed a motion to reopen her immigration proceedings and a motion to stay removal with the Tacoma Immigration Court on October 23, 2026, and submitted a separate request for a stay of removal to ICE on October 22, 2026. Dkt. 20 at Ex. 1. The government opposes petitioner's requested relief.

For the reasons below, the Court GRANTS IN PART the habeas petition (Dkt. 7), and ORDERS respondents to release petitioner within 24 hours of the filing of this

Order, subject to the conditions of her prior Order of Supervision. Petitioner's motion for a temporary restraining order (Dkt. 12) is denied as MOOT.

## I. Background

Petitioner entered the United States as a refugee with lawful permanent status on December 5. 1990. Dkt. 18 at 2; Dkt. 19-1, Form I-213 at 3. All of her siblings, except a sister who is a lawful permanent resident, are United States citizens, and, prior to her death, her mother had become a naturalized U.S. citizen. Dkt. 7 at 3-4.

On September 17, 1999, petitioner was convicted of possession of controlled substance with intent to deliver marijuana, a violation of RCW 69.50.401(a)(1), in case number 99-1-00399-2, in the Superior Court of Washington, County of Skagit, Washington, and sentenced to one to three months in prison. Dkt. 18 at 2.

On September 21, 1999, petitioner was issued a Notice to Appear (NTA), charging petitioner as inadmissible under INA § 212(a)(2)(C) as a noncitizen whom an immigration officer knows or has reason to believe is or has been an illicit trafficker in a controlled substance. Dkt. 19-2, NTA at 2.

On October 20, 1999, an immigration judge ordered petitioner removed from the United States. Dkt. 19-3, Order of the Immigration Judge. On March 15, 2000, petitioner was released from custody on an Order of Supervision. Dkt. 19-4, Order of Supervision.

On August 6, 2026, at a scheduled check-in, ICE Enforcement and Removal Operations (ERO) served petitioner with a Notice of Revocation of Release, which informed petitioner her release was revoked pursuant to 8 C.F.R § 241.4(i) because "ICE is seeking a travel document to effect your expeditious removal to Vietnam." Dkt. 19-5, Notice of Revocation of Release and Informal Interview. The notices stated she

would be afforded an informal interview on August 8, 2026. *Id.* at 2. The Certificate of Service reflects that the notice was personally served on petitioner on August 6, 2026. *Id*. at 3.

The initial notice contained errors. The government admits that its first page listed a different individual's name and A-number, rather than petitioner's identifying information. Dkt. 17 at 6. It also listed an incorrect removal date and stated that petitioner had been placed on an Order of Supervision "on or about September 24, 1999," rather than March 15, 2000. Dkt. 18, Truong Decl. at 3.

The government asserts that petitioner was offered an informal interview to respond to the initial revocation and that the interview record shows petitioner declined to participate. Dkt. 17 at 6; Dkt. 19-5 at 4.

On October 5, 2026, approximately two months after Petitioner's redetention, ERO received a travel document for Petitioner from Vietnam. Dkt. 16, Truong Decl. at 3; *but see* Dkt. 19-6 (travel document dated September 16, 2026).

On October 22, 2026, ERO personally served petitioner with a corrected Notice of Revocation of Release. Dkt. 18, Truong Decl. at 4; Dkt. 19-8, Corrected Notice of Revocation of Release and Informal Interview. The corrected notice identified petitioner by her correct name and A-number and accurately stated that she had been placed on an Order of Supervision on March 15, 2000. *Id*.

The corrected notice informed petitioner that her Order of Supervision was revoked because "ICE has obtained a travel document and scheduled your removal to take place no later than 10/08/2026." *Id*. This corrected notice stated that petitioner's removal would take place at a date that had already passed by the time the corrected

notice was served on October 22, 2026. *Id*. It is unclear whether the travel document is expired. Dkt. 19-6.

ERO now believes there is a significant likelihood that petitioner will be removed in the reasonably foreseeable future because ERO has obtained a travel document for petitioner and represents that she has been manifested on a removal flight to Vietnam in the near future. Dkt. 18, Truong Decl. at 5.

## II. Discussion

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is in “violation of the Constitution or laws or treaties of the United States[.]” 28 U.S.C. § 2241(c)(3).

### A. Statutory Framework

The authority of ICE to detain noncitizens under federal law, 8 U.S.C. § 1231, directs the Attorney General of the United States to affect the removal of any noncitizen from this country within 90 days of any order of removal. 8 U.S.C. § 1231(a)(1).

Once “removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute,” the noncitizen must be released. *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001). Upon release, a noncitizen subject to a final order of removal must comply with certain conditions of release. 8 U.SC. § 1231(a)(3), (6).

The regulation governing revocation of petitioner’s release is § 241.13(i), which specifically applies to noncitizens whom the government has determined “there is no significant likelihood . . . [that they] can be removed in the reasonably foreseeable future.” 8 C.F.R. § 241.13(b)(1).

The government's discretion to revoke the release of a noncitizen whose removal was previously found to be unlikely in the reasonably foreseeable future is limited. *See Tran v. Bondi*, No. 2:25-CV-02335-DGE-TLF, 2025 WL 3725677, at *7 (W.D. Wash. Dec. 24, 2025). A noncitizen "who violates any of the conditions of release may be returned to custody." 8 C.F.R. § 214.13(i)(1). Under § 241.13(i)(1), absent a violation of an Order of Supervision, the government may not return a noncitizen into custody.

The government may also "revoke an alien's release . . . if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 214.13(i)(2). Under § 241.13(i)(), without the government determining, on account of changed circumstances, that a noncitizen may be removed in the reasonably foreseeable future, a noncitizen may not be returned to custody. *Makuey v. Scott*, No. 2:25-CV-02135-DGE-BAT, 2025 WL 3640900, at *3 (W.D. Wash. Dec. 16, 2025).

Even if revocation is allowed by the regulation, ICE must provide notice and an opportunity to be heard, including evaluation of contested facts and a determination of whether revocation is warranted. 8 C.F.R. § 241.13(i)(3). The decision cannot be arbitrary but is governed by the factors laid out in 8 C.F.R. § 241.13(f); ICE's discretion is narrowly constrained.

Respondents do not dispute that the governing post-order detention regulations apply in this case, nor do they contend that compliance with those regulations is optional. *See generally* Dkt. 17. Instead, the government asserts that ICE may revoke the OSUP and take petitioner into custody because she could be removed within the reasonably foreseeable future. Dkt. 17 at 12. The Form I-213 states that "ERO officers

conducted a case -review and determined that petitioner's travel document application had been completed and that the Vietnamese Consulate was in the process of issuing travel documents." Dkt. 19-1 at 3. Respondents also contend that petitioner received written notice of the revocation and an opportunity to participate in an informal interview. Dkt. 17 at 12. Petitioner argues that respondents did not conduct the required initial informal interview and did not afford petitioner an opportunity to respond. Dkt. 7 at 29-30.

A travel document requested or received *after* the revocation of release is not a changed circumstance that can justify revocation – the circumstance did not exist or occur at or before the time of revocation. *Duong v. Charles*, No. 1:25-cv-1375 SKO, 2025 WL 3187313, at *3 (E.D. Cal. Nov. 14, 2025) (finding ICE failed to meet its burden because seeking travel documents almost a month after re-detaining petitioner could not constitute revocation "on account of" legally relevant changed circumstances); *Ly v. Warden, Mesa Verde Det. Ctr*., No. 1:26-cv-5839 TLN CSK, 2026 WL 3001802, at *4 (E.D. Cal. Oct. 6, 2026) (same); *Sphabmixay v. Noem*, No. 25CV2648 LL VET, 2025 WL 3034071, at *2 (S.D. Cal. Oct. 30, 2025) (finding that petitioner was entitled to release, despite respondents' securing travel documents for petitioner after re-detention because respondents' failed to comply with the requirements under §§ 241.13(i) and 241.4(l)); *Tran v. Noem*, No. 25-cv-2391-BTM-BLM, 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025) (same); *Truong v. Noem*, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (same).

Here, ICE revoked petitioner's release on August 6, 2026 and the travel document was not issued until October 5, 2026, approximately two months later.[3] Dkt. 18, Truong Decl. at 3. The government's subsequent acquisition of a travel document does not, standing alone, establish that the requirements of § 241.13(i)(2) were satisfied on August 6.

Although petitioner's Form I-213 states that her travel document application had been completed and that the Vietnamese Consulate was processing the application, respondents have not shown this development constituted a change in circumstance that existed at the time of revocation and justified the immediate return to custody. Dkt. 19-1 at 3. The fact that the Vietnamese Consulate was processing a travel document application does not establish that ICE had made the required individualized determination based on changed circumstances. Nor have respondents established that petitioner violated any condition of her Order of Supervision to justify her redetention under § 241.13(i)(1).

The Court holds that ICE violated its own regulations in redetaining petitioner without the required procedures

**B. Petitioner's Re-Detention and Fifth Amendment Due Process**

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

---

[3] The travel document is dated September 16, 2026. Dkt. 19-6.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976). Due process thus guarantees notice and an individualized hearing before a neutral decisionmaker to assess danger or flight risk *before* the revocation of an individual's release. *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) ("The fundamental requisite of due process of law is the opportunity to be heard . . . . at a meaningful time in a meaningful manner." (citation omitted); *Morrissey v. Brewer*, 408 U.S. 471, 485 (1972) (requiring a "preliminary hearing to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed . . . a violation of parole conditions" and that such determination be made "by someone not directly involved in the case[.]") (citation omitted)); *see also Vitek v. Jones*, 445 U.S. 480 (1980) (applying *Morrissey* to civil commitments).

Determining whether a particular administrative procedure satisfies due process "generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335; *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1320–21. (W.D. Wash. 2025). The Ninth Circuit has assumed without deciding that the *Mathews* framework applies in the immigration detention context. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022).

**1. Private Interest**

Under the first *Mathews* factor, the Court determines the private interest to be affected by the official action. Petitioner's interest in not being detained is “the most elemental of liberty interests[.]” *Hamdi v. Rumsfeld,* 542 U.S. 507, 529 (2004). “Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action.” *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Zadvyda*s, 533 U.S. at 696 (finding that a non-citizen has a liberty interest “strong enough” to challenge “indefinite and potentially permanent” immigration detention). A released individual had an “opportunity ‘to form the [ ] enduring attachments of normal life’” and thus has a heightened liberty interest, such as those which led the Supreme Court in *Morrisey* to impose due process requirements on parolees where the state seeks to revoke parole. *Carballo v. Andrews*, No. CV25-978-KES-EPG (HC), 2025 WL 2381464, at *4 (E.D. Cal. Aug. 15, 2025) (quoting *Morrisey v. Brewer,* 408 U.S. 471, 482 (1972),

Petitioner’s liberty interest is particularly substantial given the length of time she lived in the community under an Order of Supervision. ICE released petitioner from immigration custody on March 15, 2000. Dkt. 19-4. For more than twenty-five years, she remained in the United States subject to the conditions of that release. During that time, petitioner had the opportunity to establish and maintain relationships, participate in her community, and develop the ordinary attachments of daily life. Her longstanding release distinguishes her circumstances from those of an individual who has remained continuously detained following entry of a final order of removal. *Tran v. Bondi*, 2025

WL 3725677, at *11 (citing *Dejesus v. Bostock*, No. 25-CV-01427-JHC-TLF, 2025 WL 3268002, at *3 (W.D. Wash. Nov. 24, 2025)).

Therefore, the first *Mathews* factor weighs in petitioner's favor.

**2. Risk of Erroneous Deprivation**

The second *Mathews* factor examines both the risk of an erroneous deprivation of liberty under the procedures used and the probable value of additional or substitute procedural safeguards. *Mathews,* 24 U.S. at 335.

There has been no finding that petitioner poses a danger to the community or is a flight risk. *See generally* Dkts. 7, 17. Respondents have not shown that at the time of her arrest on August 6, 2026, petitioner was given any opportunity to respond prior to, during, or immediately after her arrest. There was no neutral decisionmaker, no meaningful notice, and no meaningful opportunity to contest ICE's assertions before petitioner's detention. Respondents have also offered no evidence that any change in circumstance had occurred at the time of revocation sufficient to authorize redetention.

Because the government did not follow its own regulations, the probable value of additional or substitute procedural safeguards is high, as it is undeniable that the risk of an erroneous deprivation would decrease if petitioner had received meaningful notice, at a meaningful time, of the specific basis for her redetention and a meaningful opportunity to be heard before a neutral decisionmaker.

The Notice of Revocation of Release contained materially incorrect identifying information. The notice listed a different individual's name and A-number and incorrectly identified the date on which petitioner had been placed on an Order of Supervision. Dkt. 19-5. Although ICE subsequently served a corrected notice on October 22, 2026, that

notice came more than two months after petitioner had already been returned to custody. The initial notice also stated that ICE was seeking a travel document to effect petitioner's expeditious removal to Vietnam. *Id*. at 2. But it did not adequately identify the changed circumstances that supposedly justified revocation or explain why those circumstances warranted returning petitioner to detention after more than twenty-five years of compliance with her Order of Supervision.

The government claims that it did not violate its regulations and provided petitioner informal interviews. But the initial interview record contains no record of petitioner's response, and the section for her oral statement is blank. Dkt. 19-5 at 4. Petitioner was in detention and was afforded no meaningful opportunity to contest ICE's assertions. After the government served her another notice of revocation, this time with her correct information, another interview occurred on October 22, 2026. The record shows the interviewer summarized her oral response: "subject made statement that it was unfair for her to send her by send her back to her country while she worked and lived in a long time after release." Dkt. 19-8 at 4. The second interview notes she did not provide a written statement or any documents. *Id.*

Even if the government believes it has a lawful basis for detention, that belief "does not eliminate [its] obligation to effectuate the detention in a manner that comports with due process." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322. (W.D. Wash. 2025).

The Court holds that detaining petitioner on August 6, 2026, and continuing to detain her without properly applying 8 C.F.R. § 241.13, has created a significant risk of an

erroneous deprivation of petitioner's liberty interest. The second *Mathews* factor weighs in petitioner's favor.

**3. Government's Interest**

The third *Mathews* factor evaluates the government's interest, including the function involved and the fiscal and administrative burdens of additional procedural requirements.

The government has a legitimate interest in ensuring that a noncitizen subject to a final order of removal appears when necessary to facilitate removal and in protecting the community from danger. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). But those interests are already contemplated and adequately protected by the narrow authority to revoke release set forth in in 8 C.F.R. § 241.13(i). *Tran v. Bondi*, 2025 WL 3725677, at *13.

Accordingly, the Court holds that the government's interest in redetaining a noncitizen, who has not been notified of the alleged violated the terms of their release nor whose removal was not established to be likely to occur in the reasonably foreseeable future at the time of redetention, without a pre-detention hearing or some other pre-detention process, is low. *See Francois v. Wamsley*, No. 2:25-cv-02122-RSM-GJL, 2025 WL 3496557, at *4 (W.D. Wash. Dec. 5, 2025) ("the Government's interest in re-detaining non-citizens previously released without a hearing is low") (citing *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)). While a pre-detention process would impose some administrative burden, that burden is minimal when weighed against the fundamental liberty interest at stake and the high risk of erroneous deprivation.

### III. Injunctive Relief

A plaintiff must meet four elements to justify an order granting a permanent injunction: first, they have suffered an irreparable injury; second, remedies at law would be inadequate to compensate plaintiff for the injury; third, considering the balance of hardships between plaintiff and defendant, an equitable remedy is warranted; and fourth, the "public interest would not be disserved by a permanent injunction." *eBay, Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006).

Petitioner asks the Court for an order prohibiting her future redetention absent notice and a hearing. Dkt. 8 at 33-34.

The Court finds that imposing conditions on any future redetention is necessary to effectuate the intent of this order. Petitioner has demonstrated a concrete risk of redetention: respondents hold a travel document to Vietnam with her name and the government has already unlawfully re-detained her once without due process.

Petitioner has suffered an irreparable injury in the deprivation of her physical liberty without due process. Monetary damages are unavailable against the government in this habeas corpus litigation. The balance of hardships favors petitioner, who lived in her community for over 25 years under her OSUP without incident, over any burden on respondents of providing constitutionally adequate process.

And the public interest is served by ensuring that the government complies with due process and its own regulations. Accordingly, the Court prohibits the government from re-detaining petitioner without notice and an opportunity to be heard. *See Yang v. Scott*, No. 2:26-CV-00469-JNW, 2026 WL 63266, at *5 (W.D. Wash. Mar. 6, 2026).

Petitioner's request that the Court order respondents to provide valid documents to her and her counsel and a two-month self-deportation window is denied because, on this record, petitioner has not met the first element, that she would suffer irreparable injury without a permanent injunction against removal without additional travel documents. Dkt. 7 at 33.

Petitioner also requests relief related to third country removals, specifically that respondents may not remove or seek to remove petitioner to third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings and order that respondents may not remove petitioner to any third country where she is likely to face imprisonment or other punishment upon arrival. On this record, the Court finds no steps taken towards third country removal for petitioner, and thus the third country claims are unripe. *See Bui v. Scott*, No. 2:25-CV-02268-TMC, 2025 WL 3706796, at *4 n.1 (W.D. Wash. Dec. 22, 2025); *Uprety v. Bondi*, No. 2:25-CV-02443-JNW, 2026 WL 194227, at *5 (declining to address third country removal claims as unripe). Nothing in this order prevents petitioner from pursuing additional relief if warranted by future events. *See Coke v. Bondi,* No. C26-71-MLP, 2026 WL 221514, at *4 (W.D. Wash. Jan. 28, 2026)

## IV. Conclusion

The petition for writ of habeas corpus is granted IN PART. Dkt. 8. It is ORDERED:

1. Respondents must RELEASE Petitioner from custody within TWENTY-FOUR (24) hours of this order, subject to the conditions of her prior OSUP.

2. Prior to any future detention by ICE, petitioner is entitled to due process notice and a hearing.
3. No later than two business days after petitioner's release, the government must file with the Court a declaration confirming the date and time petitioner has been released from custody.
4. Petitioner's motion for a temporary restraining order (Dkt. 12) is denied as MOOT.

…

Dated this 4th day of November, 2026.

Theresa L. Fricke
United States Magistrate Judge